Thank you, Your Honor. I'd like to reserve three minutes for rebuttal. I have a preliminary matter for the Court. With great reluctance and respect, I suggest that Judge McGowan should recuse in this case. And I don't know how that would be handled by this Court. Well, every judge makes a decision for himself or herself as to whether or not to hear a case. And we're going to go forward this morning, and I'm certain that Judge McGowan will consider what you've said. And if it's necessary at a later time, we'll substitute another judge. And if not, we'll decide with this panel. But please proceed with your argument. In terms of procedure, you would need to make a motion or have some basis for the recusal that we could consider. Yes. Well, I do. And if the proper way is to make a motion, then would that be permitted after this argument for me to make a motion? I don't believe the rules limit the time during which you can make that motion. I did not become aware that she was a member of the Joint Commission to Evaluate the Code of Judicial Conduct, whose work is now before this Court, so until this morning. So I will make a motion after the argument. Thank you. This case involves a challenge to five provisions of the Arizona Judicial Canons of Ethics and concerns the application of the Republican Party of Minnesota v. White case, a decision of the United States Supreme Court in 2002. Counsel, we're not to that point yet. True. The question that we have to decide initially is whether this matter is moot. Yes. Whether your client retains standing to challenge the things that you want to challenge. And I'd like to just clarify the facts and then get your take on what the law requires under those facts. The judicial election that was involved has concluded, correct? Yes. And is there – my understanding of the record is that your client has no intention of running for judicial position again. No. I'm wrong, or he is? You're wrong. That statement is not correct. It is true that he was asked by the district court to say whether or not he was intending to be a candidate in 2010, and he said no, he was not intending to be a candidate in 2010. But as to his future plans for – to run for judicial office, in the complaint, on paragraph 62 – in fact, five – six paragraphs of the complaint, 62, 85, 105, 128, 146, and 163, each state that he wishes to engage in the speech that the judicial canons prohibit and the specific speech involved in those – with respect to those canons. Both in the 2008 judicial election and in future judicial elections. Now, the canons that were in effect at the time he was a candidate have been revised, have they not? Yes. The model revision proposed by the ABA was adopted in 2009. Well, so why is there still a live controversy with respect to the ones that have been superseded? Or are you challenging the new ones that have never been? They're identical, and we are challenging the new ones, except for one. Okay. Except for one. One of them, the recusal, we have moved to dismiss our challenge to the recusal canon. But as to the other canons – Because that one was modified and revised in accord with your view? Is that – so in other words, he doesn't – your client doesn't challenge that anymore? Yes. And I hesitate to say with accord to my view, but I did testify. I mean, the client. Yes. I did testify, and it was a substantial revision. It's the judge's or the potential judge's view. He doesn't. Yes. And the recusal canon was substantially narrowed, and it may very well have been narrowed, to just pledges and promises of certain results in a particular case. We believe that that is a constitutional limitation on the speech of judicial officers and candidates, and can be a grounds for recusal. So it may very well be that this canon is as narrow as that. And so we are dismissing – we have moved to dismiss our challenge to that one. As to the other five we are challenging, all of them have been repeated verbatim in the new rules. Okay. So assuming that your client decides to run for a judicial office in 2012 or 2014, why can't he challenge it at that time? Why not? Well, you know, we brought two suits. We've been through two election cycles and have gotten no decision on the merits of this matter. And the Schaeffer case, which we cite in our brief, involved a candidate that challenged the residency requirement. Schaeffer, quote, Schaeffer refused to disclose his intentions, but argued that his political aspirations are irrelevant in evaluating the mootness exception, and this circuit accepted that proposition in Schaeffer, that he didn't have to disclose in any way, positively or negatively, his future intention on being a candidate, but he could still challenge the candidate residency requirement. The Schaeffer court cited both Dunn and Joiner, two other decisions of the Ninth Circuit, which, quote, proceeded to the merits without examining the future political intentions of the challengers. My question was if Schaeffer applies, it would suggest, of course, that it's not moot because it's capable of continuing to come up for him. So then that would then move to a second question I have. If you get past the mootness, you have to get past the ripeness still, although I recognize, you know, there's this continuum. My question there was, along the lines of Judge Graber, if whether there's a prudential, in effect, ripeness issue given the timing, since it's a hypothetical time out in the future that he might run. Well, if the case is not moot, the ripeness would go to what was the speech that he intended to engage in, and that is all before this Court. And, you know, there's been two recent decisions of the United States Supreme Court, Wisconsin Right to Life v. FEC, Citizens United v. FEC. Both of those cases involved specific speech that the groups wanted to do, one in the 2004 election, one in the 2008 election. And the Court held that reviewing that speech that they wanted to do for elections that were already passed was right because the — and so we have set forth in the record the — it's rather lengthy, the PowerPoint presentation, which involves a whole series of statements that this candidate wants to make when he runs for office and wanted to make both in the 2006 election and in the 2008 election, and would want to make in future elections. So you have the speech that is pertinent, and you have not only the Ninth Circuit saying that future intention on candidacy is irrelevant to the mootness question, but that you have six paragraphs in the complaint that state, that give the evidence you need if you choose to go under some other decision or with some other argument, you have six paragraphs of the complaint that state his intention to engage in this speech in the 2008 election and in future judicial elections. So I would say that the — both the mootness and rightness issue is well disposed of by Ninth Circuit decisions, and that you should proceed to a decision on the merits. We have been improperly dismissed twice. 2006, we were dismissed because the district court said, you need to go ask the commission whether or not your speech violates its rules. Citizens United decided just a couple of months ago said that it was improper to require a speaker to go get an advisory opinion of the Federal Election Commission because it chills and serves as a prior restraint of speech. We were restrained. We went to the commission after dismissed in 2006, and guess what? We found out as to all but one of the canons that they meant exactly what they said. We could not — our candidate could not endorse. He could not personally solicit contributions to his own campaign. As to the issue of the scope of the Pledges and Promises Clause, they said then, as they said in 2008 again, that it's circular. That is, yes, you can announce your views, like White said, subject to the restrictions of the Pledges and Promises Clause. Our question to them was, what are the restrictions of the Pledges and Promises Clause, because the Pledges and Promises Clause simply — it prohibits all pledges and promises except that that would be, quote, inconsistent with the impartial performance of the adjudicatory duty. We're not here to decide anything on the merits. Well, we are. I am asking you to. If you decide the case is not moot and you decide it is right, I am asking you to, and it's been fully briefed. So I am asking you to. Well, that would not be the ordinary case in which there has been a dismissal on the ground of mootness or ripeness or some other procedural ground. Ordinarily, if we get an appeal from such a holding, if we — we would just return it to the district court and say, you shouldn't have dismissed it. Please go forward in the normal course. Why wouldn't we do that? I understand. Well, because the First Amendment rights have been chilled by this candidate and all candidates in Arizona for five years. Two elections — now we're now in the third election cycle, and despite two suits and two improper dismissals of this candidate, we don't have a decision on the merits. We have a judicial election this year in Arizona. Well, counsel, I understand your problem, and representing the First Amendment, you come clothed with glory. But all that's happened in Arizona so far is that you haven't got up to the plate. You ask us to decide whether or not that was right, but the Arizona court has never gotten to the merits. And even if we find your way all the way, you may go back and find out that the Arizona court grants your merits. Well, maybe, but it will be another year or so. No, we'll get the opinion out quicker than that, please. Well, but then, look, we've been in the district courts, and it took a year and a half to get dismissed each time. I understand. I read the record, and I understand your frustration. And sometimes people feel that way about our rules of ripeness and standing, et cetera. But you have all of that before us now. We can solve that problem for you. Well, and I do hope you do. Or against you. We'll solve the problem. And I do hope you do. And do you have any more questions? Well, I just want to be sure I understand factually. Are you affirmatively stating that your client intends to run for judicial office in Arizona? At some indefinite point in the future, yes. That is why he said six times in his complaint that he wanted to engage in the speech in the 2008 election and in future judicial elections. It's not surprising that he didn't run this time. He's run in two election cycles. He's never got a decision on the merits despite two lawsuits. He would have to suffer under the same canons that he alleges prevents him from running an effective campaign. Why should he do that again this year? Why shouldn't he wait, as Judge Wallace suggested, is until this error is corrected, the mootness finding that goes squarely against at least three decisions of the Ninth Circuit in courting Schaefer. And we either get a decision. Well, there are distinctions from those cases. I guess, speaking for myself, that there's – I have some discomfort with saying that when the election cycle is over and it may be, you know, indefinite, it is really indefinite. It could be 15 years from now that your client decides to run, and yet you want us to decide these issues. Well, even the case that is different or was argued as different in Schaefer, Schaefer, of course, relied on Dunn and Joyner. But the case Thornston, in Thornston, the State argued that it was not rendered moot because the allegations of his complaint indicated, quote, his intention to seek reelection in the future. End of quote. Well, of course, that is indefinite. That's not I'm going to run. So the district court only asked are you going to run this cycle.  The only question by the district court, is that right? Yes. And the answer was no. And that's not unexpected. I mean, how many times do you have to beat his head against the wall to run campaigns that he doesn't think he can do effectively because he can't personally solicit, he can't endorse, he can't announce his views on disputed legal and political issues under these canons? So – but he's clear in the complaint that he intends to run in the future, 2008 and in the future. That is the same statement that the State relied upon and California relied upon in Schaefer. But the Court in Schaefer said it doesn't matter. We grant – we say that Schaefer's challenge to the residency requirement in California to be a candidate is not moot, even though he refuses to say whether he would ever run again. Now, my candidate says he's going to run again in future elections. So that should surely fit either Schaefer, Dunn and Joyner or Thornstead. Any other questions on mootness or rightness? Any more questions? I think not. We'll restore some rebuttal time. Thank you. Because we've taken a lot with questions. Yes. Thank you. Good morning. May it please the Court, my name is Kim DeMarschi, and I represent Appalee State Bar Counsel in this case. At counsel table with me is Charles Gruby. He represents the members of the two disciplinary commissions that are also defendants in Appalee's in this case. He is available and will, at the end, be taking a few minutes to address the unique circumstances of his clients who have available to them jurisdictional defenses that my client doesn't. So that's how we've split up the issues. This is a case with both mootness and race judicata problems. I'd like to start with mootness and talk about both. With regard to mootness, it's important to read the statements in the record, both in context and in order. The complaint, in identifying Mr. Wolfson as a party and explaining why he's bringing the lawsuit, says he's a candidate for the office of superior court judge in 2008. It doesn't say anything about his intent to continue to run for judicial office in the part of the complaint where he talks about who he is and why he's there. And that's paragraph 6. I concede the district court got the facts wrong. He said the district court said that the plaintiff would not run in the future, and Schaffer said nothing. He didn't say anything other than he won't run in 210, and I think it's hard to read the district court statement of what was said and square that with the record. That you're going to not run in 210 doesn't mean you're never going to run or you're not going to run in 212. We don't concede that the district court got the facts wrong, and that's why I'd like to start back at the complaint and help the court understand the order in which these facts came before the district court. But what about in the complaint? He says I'm going to run again in the future. No, he doesn't actually say that. What he says is both as part of, and I'm quoting, I'm beginning with paragraph 57, because there are a number of places in the complaint, the paragraphs that were cited to you where these statements are made over and over again. What the complaint says is both as part of his campaign and apart from it, Wolfson would like to announce his views on disputed legal and political issues and answer regarding his position on such issues in the 2008 election and in future elections. What he says is now and in the future, I'd like to talk about what I think. He then goes on to say he'd like to endorse people, and he goes on to say he'd like to personally solicit contributions. Well, let me just come back to this. The district court said that he would not run in the future, that he said he would not run in the future. He didn't say, I'm not going to run in the future. He said, I'm not going to run in 2010. Now, the district court is wrong on the facts. The record shows that. Isn't that true? Don't you have to concede that? Your Honor, I believe it's a fair reading of the supplemental briefing that Mr. Wolfson filed, that he has no present intent as of the date of that declaration to run in the future. He was asked whether he would be a candidate for office in the next election. He answered that he would not. He did not, as he should have if he wanted to maintain a not-moot action, repeat the statement of his complaint, the statement that he says is in his complaint, but isn't in his complaint in those words, that he was going to run at some indefinite point in the future. Why should he say that when he was asked one question by the district court and he answered it? Because if you look at the supplemental filing, he didn't just say, you've asked me this, my answer is no. He went on to brief for two pages the issue of mootness. And in that briefing, he said, I don't have to have any intention to seek reelection in order for this dispute to be properly supported. That's what Schaefer told him. That's what our case of Schaefer told him. But Schaefer aside, he did say that he would not run in 2010. How does that translate into, I will not run in the future, as stated by the district judge? He took the very statement of the plaintiff and misread it. Your Honor, we believe that in context, the district court was correct in understanding that by making this In context. In context. Because the complaint had not expressed an intention to specifically run in future elections, and because knowing that that was exactly what He was not asked by the district court if he will run in the future. He was asked purely if he will run in 2010. The district court then said because of that question, he will not run in the future. I don't see how we can read that without reading the district court made a mistake. And some district courts do. But how do you get around that statement? I think you have to take the statement and work from that. But you're you say, if I understand you correctly, that what the district court said in answer to a question where the defendant said I will not run in 2010, the district court can say that he said I'll never run in the future. Your Honor, I would like to move to the rightness in race judicata issues. But I just want to make very clear what our position is. My position is that the mistake here was made by Mr. Wolfson. If Mr. Wolfson's answer on mootness was I don't plan to run in 2010, but I do plan to run at some point in the future, that's how he should have answered the district court in his supplemental briefing on mootness regardless of the question. He answered the question specifically of the district judge, just like we tell witnesses to do. And he should have done that because he knew what he needed to establish in order to make such a decision. I'm sorry. I don't quite understand your argument. If you mean just what you said just then, I think I understand it. I just have difficulty agreeing with it. But why don't you go to your next argument? Mr. Wolfson has another and greater problem, and that is the application of race judicata with regard to ripeness. Mr. Bopp stood before you today and said this case has been improperly dismissed twice. That first dismissal was in 2007. It was on the basis of ripeness. It was on the basis specifically of prudential ripeness and the exercise of the district court's discretion in a prudential ripeness analysis. The district court talked about how Mr. Wolfson, given that what he wanted to do was announce his views, something he's allowed to do under Arizona's Code of Judicial Conduct, both the pre-2009 version and the post-2009 version. But given that, he just barely met the standing requirements. And the Court was going to decline jurisdiction on prudential ripeness, and I'm quoting here, until plaintiff actually faces either an enforcement proceeding or the imminent threat of one. That decision, which Mr. Bopp now tells you was incorrect, was not appealed all the way through a decision by this Court. Mr. Wolfson filed an appeal, and then he voluntarily dismissed that appeal. So the district court's ruling that Mr. Wolfson cannot again present a constitutional challenge to these three canons until he faces either an enforcement proceeding or the imminent threat of one, that's res judicata, that is binding on him, and that barred him from bringing his 2008 challenge. That's an additional ground on which it's proper to affirm the district court. From Mr. Bopp's argument, I gather the panel doesn't want me to address the merits. We have briefed them. We don't concede the merits. And I would like to give Mr. Gruby time to address the unique procedural issues with regard to his clients. Sotomayor, we'll hear from Mr. Gruby. Thank you, Your Honor. Thank you, Your Honor. Good morning. My name is Charles Gruby. I'm an Assistant Attorney General for the State of Arizona. I represent the individual members of the Commission on Judicial Conduct and the Disciplinary Commission of the Supreme Court. It's our position that the district court's decision should be upheld, both for the reasons the district court said, but also for the additional reasons that we raised in our motion to dismiss. I suggest, Your Honor, and anticipating Judge Wallace's views on the subject, that you need to look at this case as a mootness case, obviously, but you also need to look at the effect of the first case, Wolfson 1, on the mootness analysis in this case. This is an unusual situation. This is not a case, this particular case, is not a case that will evade review. Instead, as a result of the first case, Wolfson 1, the district court said to Mr. Wolfson, the doors of this court are wide open to you as soon as you face an imminent threat or an actual enforcement proceeding. So this isn't a case where review will be evaded by a mootness determination. Well, he took prudential ripeness and decided you ought to go talk to these folks first, and he decided on the basis, that basis. He didn't need to get any further. Now that he's got that in his hand, what they've said, I suppose the prudential ripeness issue is beyond what we need to deal with, but we still have mootness and we have other parts of ripeness to deal with. Two things, though, Your Honor. One is that first decision really didn't say go and get an advisory opinion. That first decision said here are some things you could do, and taking that into account with all of the other things the district court looked at, including, frankly, the speculation upon speculation of whether Mr. Wolfson could ever face an enforcement proceeding from any of my clients under any hypothetical set of facts, the court came to the conclusion that the door of the court would be open, but only if there's at least an imminent threat. But that does factor in, and your point is right, that factors into the mootness analysis here. In the first place, the first leg of the mootness exception, because nobody argues this case isn't moot. It is moot. The election has passed. The question is whether an exception to the mootness doctrine should be applied. There are two legs to it. The first one, and my friend Mr. Bott has done an excellent job of explaining what happened in that first case, and I suggest to you that that really supports the argument we made in our brief, that this is a case where there has been enough time for a full judicial review. The first case was brought in October of 2006. There was an appeal pending in this Court by September of 2007. The panel made a facetious remark earlier that it doesn't take us that long to decide on cases, and I agree. I agree. If that appeal had been pushed in 2007, except, of course, that it was voluntarily withdrawn in October of 2007, there would have been two years. I should have said usually. Yeah. But I think your point was effective either way, Your Honor. There was time. But for whatever reason, Mr. Wolfson decided he didn't want to appeal that first case. So that first case is binding. But that first case really doesn't hurt him, and that's the second leg of the mootness analysis. The second leg for the exception is that this has to be a case that evades review but is reasonably susceptible of repetition. Well, this one didn't evade review. There was an appeal here more than two years ago. So it's hard to see how it fits that piece of it. Is it reasonably susceptible of repetition? Is where the bulk of our questions have come. I think the argument is that we're talking about a short campaign period, and the argument is that during that short campaign period, it's not logical that you could get the issue completely through. What's your response to that? Well, Your Honor, my response to that is the facts of this particular case. Now, that would be the normal case in many election cases, where there's a very short period of time, a window of weeks, sometimes months, to challenge these things. But in this case, Mr. Wolfson started his case in October of 2007, or 2006, at a time that he was a candidate for election in the general election in November of that same year. So it was only about a month. Now, that's a short window. But the case was not dismissed on those sorts of standing grounds because Mr. Wolfson immediately announced at that point, when he lost his Justice of the Peace election, that he had an exploratory committee for the superior court judge position in the same county in Arizona. So he was a candidate all the time during the first case. And he was a candidate through almost all of the time of the second case. As a matter of the facts of this individual case, we shouldn't imagine that it's too soon to say that in this individual case it was not. But did we still – well, the fact of the matter is we don't have – or he doesn't have a decision on the merits. So he's in the position of self-censorship or facing the threat of a hearing. Your Honor, I believe that that's the argument. But here is my response to that. For instance, my friend Mr. Bopp remarked that there's been a terrible deprivation of his ability to announce his views. And he pointed to the PowerPoint presentation in the record. Well, the U.S. Supreme Court says he can announce his views. The Judicial Ethics Advisory Commission of the State of Arizona said you can announce your views. That's not an issue before us. But I thought that was one section he said was not on the table at this point. No. I think his argument was that because there's also a restriction against pledging or promising particular results in a case, his client would have trouble telling the difference between announcing his views, which everybody agrees he can do, and making pledges or promises of results in future cases, which I think everybody agrees he can't do. I want to be sure I understand your argument about the portion of the mootness exception that deals with evading review. Is it your position that had the September 2007 appeal not been withdrawn, this would not have been an issue before us? Your Honor? Or not. I believe that. Or we would have we – well, let me – that's not exactly right, because that was just like this one. That was a ripeness holding. Correct. But had we held at that time that it was ripe, presumably the district court then soon thereafter would have had to decide the merits, some three years ago or two years ago or something like that. That's correct, Your Honor. And I would make an additional point in support of that. This is not a case like many of those in the Ninth Circuit's jurisprudence on this mootness analysis. This is not a case where the facts are incredibly complicated. This isn't a case like an environmental case where you would remand for what would be expected to be a lengthy trial. This is a case where there's a facial challenge to a short set of judicial canons. And as the record shows, some limited material, but material nonetheless about what the candidate wants to say and what the candidate wants to do. So this is not a case that would require a long time at the district court to reach the merits, should that be the case. So the time that was available was adequate, probably more than adequate. But what happened was two district courts in this case looked at the merits, but they looked at them on the preliminary injunction stage. And both district courts found that Mr. Wolfson had not made a case for a reasonable probability of success on the merits. The eventual decisions were made first on prudential rightness grounds and then second, as before us, on mootness grounds. But this is not a case where the district court was blind to the merits. So how does that figure, though, into now what we're focusing on, which is mootness? Well, a couple of things, Your Honor. One is, my principal point there was that there was, there would have been plenty of time to reach this case on the merits if the first case had been appealed and this Court had remanded and directed that. So this is not a case, on the facts of this case, where we have an issue that's too short of duration to allow for judicial review, the first leg of the mootness exception. But then on the second leg of the mootness exception, whether it evades, this is a case that evades review just because elections come and go, the factual record shows that's not the case. The 2006 election came and went, but the district court's work went on. So neither one of them fit here on the specific facts of this case. And, Your Honor, there's an additional, if you'll indulge me, I understand I've run over time, there's an additional reason why the mootness analysis makes very good sense in this case, and that is, as to my particular clients, there's simply no case or controversy. In the first case, Wolfson 1, the Court found, as my friend Mr. Marchi remarked, that Mr. Wolfson had just barely met the standing requirement for constitutional standing, constitutional rightness analysis. But my clients are in a procedural position where that's simply not true. Because they're the disciplinary body. They are. And if it's not running, there's no threat of discipline. For the Commission on Judicial Conduct, that's doubly true, because for the commission to ever have any jurisdiction over Mr. Wolfson, he would not only have to run in the future, he'd have to win in the future. They only have jurisdiction over judges. As to my other group of clients, the disciplinary commission of the Supreme Court, they're the group that functions as an intermediate appellate tribunal when complaints are brought on against a member of the bar of the State of Arizona. And, of course, a judicial candidate who's also a member of the bar who may violate the jurisdiction of a judicial candidate would be subject to that line of discipline. But my clients are an intermediate review body. They have no power to institute proceedings. So your clients are in a different posture with respect to case and controversy than the State Bar. That's correct, Your Honor. The disciplinary counsel of the State Bar would have the power to institute proceedings. That's the first line disciplinary for a lawyer, correct? That's correct, Your Honor. What happens is when a complaint is reached, the disciplinary commission or the disciplinary commission sits as an intermediate review body. But before it ever gets there, those complaints go through an intense vetting, investigation, and recommendation proceeding. Let me ask a question. I don't fully understand Schaeffer, and we've all been dealing with it. The district court decided it didn't have to worry about Schaeffer and distinguished it on the basis that Schaeffer didn't say anything. But the plaintiff in this case said he wasn't going to run in the future. Is — will that hold up as a way to distinguish Schaeffer? Your Honor, I believe the district court was on to something, but let me tell you what I think that is. I understand your concern that the district court may have simply been wrong as a fact matter. But I don't read the decision that way. The district court says that Mr. Wolfson didn't express an intention to be a candidate in any election in the near future, and that was certainly true. He said he wasn't going to run in the next election, the 2010 election, the one that's still coming up in November of this year. Then the court also went on to say that this is a case where the plaintiff has affirmatively stated that he will not, but the sentence before that refers to the next election. So I don't think the district court was mistaken by saying that Mr. Wolfson had somehow said, I will never run again. I don't think that's where the district court was going. Here's where I think the district court was going, and here's why the district court was right. Mr. Wolfson, as the case is constituted today, is indistinguishable from every other adult member of the citizenry of the United States, because each and every one of us could possibly be a judicial candidate in the future. Every one of us. But the other people out there haven't been in a position of self-censorship as a result of how he interpreted the rules. So he does – is distinguished from at least some large number of the lawyers in Arizona who haven't run and haven't been subject to the rules, isn't he? Your Honor, I understand that analysis, but I regretfully disagree with it, and here's why. How do we know how many of them didn't? Because it's purely hypothetical. It's purely speculative. Frankly, it's purely speculative on this record that Mr. Wolfson actually engaged in any real self-censorship. So let's go with the thought that there may be people out there who don't want to find these strictures to be unpleasant or scary. Let's go with that. That could be true of every one of us. That could be true of every one of us. And what the district court was getting at is that this analysis has to mean something. The first leg has to mean something. And if it has to mean something, it has to mean that there is someone who's an adult citizen of the United States who would not have the ability to invoke this immediately to run. The only distinction, as you point out, Your Honor, is that Mr. Wolfson has done it in the past. But that's in the past. Thank you, counsel. If my colleagues have no further questions, I think we'll give Mr. Ropp some rebuttal time. Thank you, Your Honor. This is a very interesting discussion, I would say. Thank you very much. First, whether this case meets the first prong, there must be a hundred decisions, of course, of appeal in the Supreme Court that have said elections are classic because the litigation can't complete. The time period does not allow the litigation to complete on appeal. Not that it can't get somewhere for a little bit of time, but the point is litigation, you know, cannot complete. And, of course, that cannot happen in a month, and it cannot happen even in a year with respect to an election cycle. So, clearly, the period of time is too short. Second, we are not required to violate the law. My candidate is not required to violate the canons and be subject to an investigation and an enforcement action. That's why we have pre-enforcement challenges under the First Amendment where speech is chilled and our candidate did not, did engage in self-censorship. He did not endorse any candidates while running for office either time. He did not personally solicit any contributions either time, and he did, and he changed his presentation to delete statements which we set forth on page 33 of our brief, statements about, that amount to announcing his views on disputed legal and political issues such as traditional marriage. He wanted to announce those views. He changed his presentation to delete those statements because of his fear that it would be, which was justifiable fear, that that would be encompassed by the pledges and promises canon. You know, we are entitled to challenge these canons when our speech arguably falls within the statute's reach. It's certainly without a doubt as the different advisory opinions, which as a result of the first case, the Court said, yes, they said you had to be faced with an imminent threat, so go ask for an advisory opinion to find out from them will they enforce this against you because these statements would be prohibited by the canon. We did. Counsel, what is the legal effect on our analysis of the ripeness question of the first dismissal that was not appealed? Are we to take anything from that? Nothing because we met the requirements that the Court set forth. We, nothing. I mean, we went and got an advisory opinion and found out what we already knew, which is that the canons prohibit endorsements of other candidates, that it prohibits personal solicitation of funds. Three of the canons we, well, actually four of the canons we are challenging would be, would prohibit that conduct. And we still did not get an answer about the vague Pledges and Promises Clause because they created a circle. They said, yes, you can announce the views subject to. In other words, your announcement can be limited by the Pledges and Promises Clause. Our question was how does the Pledges and Promises Clause limit our speech? And when the clause itself provides no ascertainable standard because impartiality is a principle, it is not a statement of what you can say or not say. It is a principle. So what does that principle encompass? We asked specifically, with specific speech, the commission to tell us, and they refused. They just said, you just watch out. Don't let your announcing violate the Pledges and Promises Clause. And there was no way for us to ascertain what that means. So because it's a principle, not a statement of what we can say or not say. So, and of course, finally, as to, you know, this, whether or not these canons can affect this candidate, this argument about other lawyers doesn't mean anything. Our, my client, client was a candidate. He brought suit when he was a candidate. Now, once the election occurred, I agree it's moot, but it's capable of repetition, but escaping review, in one of the Supreme Court cases we cited, the Court found that the case could be, the case was capable of repetition, but escaping review because the union person ran for office twice in the past and could run again. There was no intention that he would run again in that Supreme Court case. It just said he could very well run again, and the evidence of that was that he had run twice in the past. We go way beyond that in what we have presented here, and we cannot be faulted, honestly, for answering the district court's opinion, respectfully answering his opinion, and not answering questions he did not ask.  And there was no need for it. We have it in the complaint that he wants to do this specific speech in the 2008 election and in future judicial elections, and we say that with respect to each of the speech, types of speech that he wants to engage in. Thank you for your attention. Thank you, counsel. We appreciate the arguments of both counsel in this challenging case, and the case is submitted, and we will stand adjourned for the morning session.
judges: Wallace, Graber, McKeown